SEAN REIS (SBN 184044)
(sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON*
(jedelson@edelson.com)
RAFEY S. BALABANIAN*
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE*
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

[additional counsel appearing on signature page]

* *Pro hac vice* Application Forthcoming

*Attorneys for Plaintiff* NICOLE PIMENTAL
and the putative class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE PIMENTAL, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation, and SLIDE, INC., a Delaware corporation,<br><br>　　　　　Defendants. | Case No. 11-cv-02585-DMR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

# FIRST AMENDED CLASS ACTION COMPLAINT

1. Plaintiff Nicole Pimental ("Plaintiff" or "Pimental") brings this First Amended Class Action Complaint against Defendants Google Inc. and Slide Inc. to stop Defendants' practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by their conduct. Plaintiff Pimental, for her First Amended Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

2. Plaintiff Nicole Pimental is a natural person and citizen of the State of Pennsylvania.

3. Defendant Google, Inc. is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google does business throughout the United States, including in the State of California and this District.

4. Defendant Slide, Inc. is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business at 301 Brannan St, 6th Floor, San Francisco, California 94107. Slide is a wholly owned subsidiary of Defendant Google. Slide does business throughout the United States, including in the State of California and this District.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

6. Venue is proper in this district under 28 U.S.C. § 1391 (a)(1-2) as Defendants reside in this District and a substantial part of the events giving rise to the claims asserted here occurred

in this District.

## COMMON ALLEGATIONS OF FACT

**A.      Bulk SMS Marketing**

7.      In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

8.      Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

9.      When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

**B.      Defendants Transmit Text Messages to Consumers Who Do Not Want Them**

10.     The newest evolution of text message marketing has taken the form of "group messaging" applications, such as Defendants' group texting service "Disco," in which a single person or entity is able to create a group and transmit text messages to dozens of people at once. Likewise, a group texting service allows all the recipients to respond to all other members of the group with a single message.

11.     In or around April 2011, Defendants released a service called Disco, available on the Internet at Disco.com. Defendants Google and Slide jointly developed and designed the Disco service. On information and belief, both employees of Google and Slide participated in and played an integral role in Disco's production and release.

12. Disco is marketed by Defendants as a "group texting" tool, allowing customers to simultaneously send SMS text messages to large groups of people *en masse*, using one common cellular telephone number provided by Defendants.

13. Using the Disco website or mobile application, a customer signs up, creates a "group," and then adds up to ninety-nine (99) other individuals to that group by entering their full names and cellular telephone numbers.

14. Defendants do not seek to obtain consent to be part of the group, nor does the group originator need to demonstrate consent, or even agree to gain the consent of the group members.

15. A consumer's participation in the group is opt-out, meaning that a consumer may be added to and kept in the group without authorization.

16. Once all group members receive a message, they too can respond to everyone else in the group an unlimited number of times, creating an ongoing "chat room" effect of nearly constant text messages. Because the messages come from an unknown number, and the group creator can easily input a fake name, the resulting chat room can be a chaotic storm of text messages in which people are attempting to figure out what the group is, who the creator is, how they were put in the group, and how to stop it.

17. The overall result of this software design is that thousands of consumers receive text messages through Defendants' Disco service that they neither consented to nor wanted.

**C.   Defendants Harvest the Phone Numbers Submitted by Group Creators to Promote the Disco Service Through Text Spam**

18. Additionally, a group text service opens up an opportunity for the company controlling the flow of messages, in this case Defendants, to transmit spam text calls to the thousands of phone numbers added by consumers who are creating groups for their own individual use.

19. Defendants harvest all phone numbers added by group creators in order to independently transmit their own text message advertisements promoting their service and mobile application.

20. The moment a consumer creates a Disco texting group, but before the group creator actually tries to text anyone in the new group, every member of the group instantly receives several text messages directly by Defendants.

21. These text messages include specific advertisements for Disco's service and mobile application, and contain a direct link to download the Disco mobile application.

22. The group creator is not informed that advertisements or other text messages will be made by Defendants and cannot control their transmission.

### D. Plaintiff's Experience with Defendants

23. On or about June 18, 2011, Plaintiff's cell phone rang, indicating that a text call was being received. The text message read:

> Hi [group member], it's [group creator].  Welcome to Disco!
>
> I just added you to "[group name]."
>
> Reply to join our chat or text *who for roster.
>
> Disco is a group texting service.
>
> Standard SMS rates may apply
>
> or chat for FREE w/ our app – http://disco.com/d
>
> More info? Text *help  To quit? Text *leave

24. This text message was not transmitted or initiated by the group creator.

25. At no time did Plaintiff consent to the receipt of text messages from Defendants or the group creator.

26. Plaintiff did not know the creator of the group.

27. Immediately after receiving the first text message Plaintiff received several more unwanted text messages through the Disco.com service.

28. Plaintiff immediately responded "leave" in order to try and stop further text messages, but the messages continued. Plaintiff responded "leave" two more times without success.

29. By making these unauthorized text message calls, Defendants have caused consumers actual harm. In the present case, because of the nature of group texting, a consumer could be subjected to hundreds of text messages before having an opportunity to opt out.

30. In order to redress these injuries, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

31. On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class defined as follows:

### Disco Messages Class

All persons who (1) received a text message directly from the Disco group texting service that was not sent by a Disco group leader or another member of a Disco group; and (2) all persons who opted-out of a Disco texting group within twenty-four hours of receipt of an initiating text message or who was a member of a Disco texting group that was closed within twenty-four hours of its creation.

33. Excluded from the Class are Defendants, their legal representatives, assigns, and successors, and any entity in which Defendants have a controlling interest. Further excluded are Plaintiff's attorneys. Also excluded is the judge to whom this case is assigned and the judge's immediate family, as well as any person who created a Disco group.

34. Upon information and belief, there are tens of thousands of persons in the Class, such that joinder of all members is impracticable.

35. Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither

FIRST AMENDED CLASS ACTION COMPLAINT
-6-

Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

36. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

37. Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

38. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of transmitting wireless spam.

39. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

    (a) Does the wireless spam Defendants transmitted violate 47 U.S.C. § 227?

    (b) Are the Class members entitled to treble damages based on the willfulness of Defendants' conduct?

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)

40. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

41.     Defendants made unsolicited text calls, including the message in paragraphs 24 and 31, to the wireless telephone numbers of Plaintiff and the Class.  Each such text message call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

42.     These text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

43.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii).  As a result of Defendants' conduct, the members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

44.     Because Defendants had knowledge that Plaintiff and members of the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

**WHEREFORE**, Plaintiff Nicole Pimental, on behalf of herself and the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Pimental as class representative and appointing her counsel as class counsel;
2. An award of actual and statutory damages;
3. An injunction requiring Defendants to cease all wireless spam activities, and otherwise protecting the interests of the Class;
4. An award of reasonable attorneys' fees and costs; and
5. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

| | | |
|---|---|---|
| 1 | Dated: June 24, 2011 | Respectfully submitted, |
| 2 | | NICOLE PIMENTAL, individually, and on behalf of all others similarly situated, |
| 3 | | |
| 4 | | |
| 5 | | By:  /s/  Sean P. Reis<br>SEAN REIS (SBN 184044) |
| 6 | | (sreis@edelson.com)<br>EDELSON MCGUIRE, LLP |
| 7 | | 30021 Tomas Street, Suite 300<br>Rancho Santa Margarita, California 92688 |
| 8 | | Telephone:  (949) 459-2124<br>Facsimile:  (949) 459-2123 |

JAY EDELSON*
(jedelson@edelson.com)
RAFEY S. BALABANIAN*
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE*
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378


SCOTT D. OWENS*
(scott@scottowens.com]
Law Offices of Scott D. Owens, Esq.
2000 East Oakland Park Boulevard, Suite 106
Ft. Lauderdale, Florida 33306
Telephone: (954) 306-8104
Facsimile: (954) 337-0666



* *Pro hac vice* Application Forthcoming

FIRST AMENDED CLASS ACTION COMPLAINT
-9-