SEAN REIS (SBN 184044)
(sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

[Additional counsel appearing on signature page]

*Attorneys for Plaintiffs* NICOLE PIMENTAL, JESSICA FRANKLIN and the Putative Classes

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE PIMENTAL and JESSICA FRANKLIN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation, and SLIDE, INC., a Delaware corporation,<br><br>                    Defendants. | Case No. 11-cv-02585-SBA<br>*Consolidated with:*<br>Case No. 11-cv-3333-SBA<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

**CONSOLIDATED CLASS ACTION COMPLAINT**

1. Plaintiffs Nicole Pimental ("Pimental") and Jessica Franklin ("Franklin") (Pimental and Franklin are collectively referred to as the "Plaintiffs") bring this Consolidated Class Action Complaint against Defendants Google Inc. and Slide Inc. to stop Defendants' practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by their conduct. Plaintiffs Pimental and Franklin, for their Consolidated Class Action Complaint, alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**PARTIES**

2. Plaintiff Pimental is a natural person domiciled in the State of Pennsylvania.

3. Plaintiff Franklin is a natural person domiciled in the State of North Carolina.

4. Defendant Google, Inc. is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google does business throughout the United States, including in the State of California and this District.

5. Defendant Slide, Inc. is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business at 301 Brannan St, 6th Floor, San Francisco, California 94107. Slide is a wholly owned subsidiary of Defendant Google. Slide does business throughout the United States, including in the State of California and this District.

**JURISDICTION & VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

7. Venue is proper in this district under 28 U.S.C. § 1391 (a)(1-2) as Defendants reside

in this District and a substantial part of the events giving rise to the claims asserted here occurred in this District.

## COMMON ALLEGATIONS OF FACT

### A. Bulk SMS Marketing

8. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

9. Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

10. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

### B. Defendants Transmit Text Messages to Consumers Who Do Not Want Them

11. The newest evolution of text message marketing has taken the form of "group messaging" applications, such as Defendants' group texting service "Disco," in which a single person or entity is able to create a group and then Defendants are able to transmit text messages to all the members of that group at once. Likewise, a group texting service allows all the recipients to respond to all other members of the group with a single message.

12. In or around April 2011, Defendants released a service called Disco, available on the Internet at Disco.com. Defendants Google and Slide jointly developed and designed the Disco service. On information and belief, both employees of Google and Slide participated in and played

an integral role in Disco's production and release.

13. Disco is marketed by Defendants as a "group texting" tool, allowing customers to simultaneously send SMS text messages to large groups of people *en masse*, using one common cellular telephone number provided by Defendants.

14. Using the Disco website or mobile application, a customer signs up, creates a "group," and then adds up to ninety-nine (99) other individuals to that group by entering their full names and cellular telephone numbers.

15. Defendants do not seek to obtain consent of the participants to be part of the group, nor does the group originator need to demonstrate consent, or even agree to gain the consent of the group members before text message calls are sent to the group.

16. A consumer's participation in the group is opt-out, meaning that a consumer may be added to and kept in the group without authorization. Often times, however, a consumer who has been added to a group will continue to receive unauthorized text message calls even after they have attempted to opt out of the group.

17. Once all group members receive a message, they too can respond to everyone else in the group an unlimited number of times, creating an ongoing "chat room" effect of nearly constant text messages. Because the messages come from an unknown number, and the group creator can easily input a fake name, the resulting chat room can be a chaotic storm of text messages in which people are attempting to figure out what the group is, who the creator is, how they were made a part of the group, and how to stop it.

18. The overall result of this software design is that thousands of consumers receive text message calls through Defendants' Disco service that they neither consented to nor wanted.

C. **Defendants Harvest the Phone Numbers Submitted by Group Creators to Promote the Disco Service Through Text Spam**

19. Additionally, a group text service opens up an opportunity for the company controlling the flow of messages, in this case Defendants, to transmit spam text calls for their own individual use to the thousands of phone numbers added by consumers who are creating groups.

20. Defendants harvest all phone numbers added by group creators in order to independently transmit their own text message advertisements promoting their service and mobile application, even before the group creator sends any text messages.

21. The moment a consumer creates a Disco texting group, but before the group creator actually tries to text anyone in the new group, every member of the group instantly receives several text messages directly by Defendants without the consent of the group leader or the invitee, in violation of the TCPA.

22. These text messages include specific advertisements for Disco's service and mobile application (the "Disco Mobile App Text"). The Disco Mobile App Text contains a direct link to download the Disco mobile application.

23. Defendants do not disclose and the group creator is not informed that the Disco Mobile App Text and other advertisements through text message calls will be made by Defendants, and the group creator cannot control their transmission.

24. The initial Disco Mobile App Text is sent directly by Defendants to every group member, and its transmission is neither controlled by nor disclosed beforehand to the group leader or any group member.

**D.    Plaintiffs' Experience with Defendants**

25. On or about June 18, 2011, Plaintiff Pimental's cell phone rang, indicating that a text call was being received—it was the Disco Mobile App Text, which read:

> Disco is a group texting service. Standard SMS rates may apply or chat for FREE w/ our app – http://disco.com/d  More info? Text *help  To quit? Text *leave

26. This text message call was not transmitted or initiated by the group creator.

27. In addition to the Disco Mobile App Text, Pimental received several more unwanted text message calls through the Disco.com service. For example, Pimental also received the following text message call:

> Hi [group member], it's [group creator].  Welcome to Disco! I just added you to "[group name]." Reply to join our chat or text *who for roster.

28. Pimental immediately responded "leave" in order to try and stop further text message calls because she did not know who the group creator was, and immediately recognized it as spam. However, Pimental continued to receive text message calls through the Disco service. Pimental responded "leave" two more times to no avail.

29. At no time did Pimental consent to the receipt of text message calls from Defendants or the group creator, including the Disco Mobile App Text. Pimental did not even know the creator of the group.

30. On or about June 27, 2011, Plaintiff Franklin's cell phone rang, indicating that a text message call was being received—it was the Disco Mobile App Text, which read:

> Disco is a group texting service Standard SMS rates may apply or chat for Free w/our app-    http://disco.com/daZZMoreinfo?Text*helpZ to quit? Text *leave

31. This text message call was not transmitted or initiated by the group creator.

32. In addition to the Disco Mobile App Text, Franklin received several more unwanted text message calls through the Disco.com service. For example, Franklin also received the following text message call:

> Hi [group member], It's [group creator]. Welcome to Disco! I just added you to "[group name]." Reply to join our chat or text *who for roster.

33. Franklin initially did not reply to either of these text message calls because she did not know who the group creator was, immediately recognized it as spam and hoped that nothing further would come of it. However, Plaintiff Franklin continued to receive text message calls through the Disco service. In fact, she received over 150 unwanted text message calls in the first day alone. At some point during the day, Franklin responded "leave" in order to stop further text message calls, to no avail.

34. At no time did Franklin consent to the receipt of text message calls from Defendants or the group creator. Franklin did not even know the creator of the group.

35. By making unauthorized text message calls as alleged herein, Defendants have caused consumers actual harm. In the present case, because of the nature of group texting, a

consumer could be subjected to hundreds of text messages before having an opportunity to opt out and even after they have attempted to opt out.

36. In order to redress these injuries, Plaintiffs, on behalf of themselves and a class and subclass of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

37. On behalf of the Class, Plaintiffs seek an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the Classes defined as follows:

> **The Disco Mobile App Class:**
> All persons who received the Disco Mobile App Text, or a substantially similar text from Defendants, that advertised Disco's mobile application.
>
> **The Leave Subclass:**
> All persons who received any text message calls through the Disco group texting service after texting "leave" to a Disco texting group

39. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys, (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

40. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiffs' claims are made in a representative capacity on behalf of the other members of the Classes and Plaintiffs have no interests antagonistic to the interests of the other members of the Classes and are subject to no unique defenses. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

41. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

42. Defendants have acted and/or failed to act on grounds generally applicable to the Plaintiffs and the other members of the Classes in transmitting the wireless spam at issue, thereby making appropriate the Court's imposition of final injunctive relief to ensure compatible standards of conduct toward the members of the Classes. Specifically, injunctive relief is necessary and appropriate to require Defendants to: discontinue sending unsolicited and unauthorized spam text messages to the public.

43. The factual and legal bases of Defendants' liability to Plaintiffs and to the other members of the Classes are the same, resulting in injury to the Plaintiffs and to all of the other members of the Classes as a result of the transmission of the wireless spam alleged herein. Plaintiffs and the other members of the Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of transmitting wireless spam.

44. Upon information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

45. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

    (a) Does the wireless spam Defendants transmitted violate 47 U.S.C. § 227?

    (b) Are the members of the Classes entitled to treble damages based on the willfulness of Defendants' conduct?

46. Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct. Plaintiffs, like other members of the Classes, received unsolicited spam text message calls from Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Classes.

47. In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The claims asserted herein are applicable to all consumers throughout the United States who received an unsolicited spam text message from Defendants. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device

presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

48.   Adequate notice can be given to the members of the Classes directly using information maintained in Defendants' records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**

49.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

50.   Defendants made unsolicited text message calls, including the text message calls referenced in paragraphs 22 and 37, to the wireless telephone numbers of Plaintiffs and the Classes. Each such text message call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

51.   These text calls were made *en masse* and without the prior express consent of the Plaintiffs and the other members of the Classes to receive such wireless spam.

52.   Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiffs and the other members of the Classes are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

53.   Because Defendants had knowledge that Plaintiffs and the other members of the Classes did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the Classes.

**WHEREFORE**, Plaintiff Nicole Pimental and Jessica Franklin, on behalf of themselves and the Classes, prays for the following relief:

1.   An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiffs Pimental and Franklin as

representatives of the Classes and appointing Edelson McGuire, LLP as lead class counsel and Weiss & Lurie as liaison class counsel;

1. An award of actual and statutory damages;

2. An injunction requiring Defendants to cease all wireless spam activities, and otherwise protecting the interests of the Classes;

3. An award of reasonable attorneys' fees and costs; and

4. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: September 14, 2011

NICOLE PIMENTAL and JESSICA FRANKLIN, individually, and on behalf of all others similarly situated,

By: /s/ Sean P. Reis
SEAN REIS (SBN 184044)
(sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone:  (949) 459-2124
Facsimile:  (949) 459-2123

By: /s/ Jordan Lurie
JORDAN L. LURIE (SBN 130013)
(jlurie@weisslurie.com)
JOEL E. ELKINS (SBN 256020)
(jelkins@weisslurie.com)
WEISS & LURIE
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, California 90024
Telephone:  (310) 208-2800
Facsimile:  (310) 209-2348

JAY EDELSON (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE (Admitted *Pro Hac Vice*)
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

Stefan Coleman
LAW OFFICES OF STEFAN COLEMAN, PLLC
1072 Madison Ave, Suite 1
Lakewood, NJ  08701
Telephone: (877) 333-9427

SCOTT D. OWENS (Admitted *Pro Hac Vice*)
(scott@scottowens.com]
Law Offices of Scott D. Owens, Esq.
2000 East Oakland Park Boulevard, Suite 106
Ft. Lauderdale, Florida 33306
Telephone: (954) 306-8104
Facsimile: (954) 337-0666

*Counsel for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I, Sean P. Reis, an attorney, hereby certify that on September 14, 2011, I served the above and foregoing *Consolidated Class Action Complaint*, by causing true and accurate copies of such paper to be filed with the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system on this the 14th day of September, 2011.

/s/ Sean P. Reis