UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE PIMENTAL and JESSICA FRANKLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC. and SLIDE, INC.,<br><br>Defendants. | Case No.: C-11-02585-YGR<br><br>**ORDER DENYING MOTION TO STAY** |

Plaintiffs Nicole Pimental and Jessica Franklin assert a single claim for relief, alleging that Defendants Google Inc. and Slide, Inc. ("Defendants") violated the Telephone Consumer Protection Act of 1991 ("TCPA") by using an automatic telephone dialing system to transmit text message advertisements to the Plaintiffs' cellular telephones without obtaining Plaintiffs' prior express consent.

Defendants have filed a motion to stay the litigation to permit the Federal Communications Commission ("FCC") to decide two issues raised in a recently filed petition before the agency.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the Motion to Stay.[1]

**I. BACKGROUND**

Defendants offered a group texting service known as "Disco," which enabled individuals to create "groups" to send text messages to as many as ninety-nine (99) people at once. Complaint ¶¶ 11-14. According to the Complaint, a consumer's prior express consent was not required to be added to a "group." *Id.* ¶ 15. The Complaint alleges that "Defendants made unsolicited text message calls .

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this motion, which has been noticed for hearing on May 1, 2012, is appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for May 1, 2012.

. . using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Id.* ¶ 50.

Plaintiffs assert a single claim for violations the TCPA. Defendants deny liability, raising affirmative defenses that (1) they obtained the required "prior express consent" because individuals who received text messages knowingly released their telephone numbers to Disco – either directly when signing up for the service and agreeing to the Disco terms of use, or indirectly through the group creators – and (2) the technology used to operate the Disco service did not constitute an "automatic telephone dialing system" ("ATDS") – their technology does not have the "capacity" to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers. *See* Answer, Dkt. No. 61, at 6-7.

### 1. Statutory Framework

The TCPA regulates telemarketing – the practice of marketing goods or services by telephone. In 1991, Congress found that telemarketing had grown substantially and that calls seeking to sell products and services "can be an intrusive invasion of privacy." *See* 47 U.S.C. 227; Pub. L. No. 102-243, §§ 2(4), (5) (1991) (Congressional Statement of Findings). Congress further found that "[o]ver half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations." *Id.* § 2(7). The TCPA was passed to create a uniform regulatory scheme for telemarketers. *See* RJN Ex. 5 ¶ 83. In enacting the TCPA, Congress vested the FCC with the authority to regulate interstate and intrastate telemarketing. *See generally* 47 U.S.C. § 227.

Among its provisions, the TCPA prohibits the use of an ATDS to send text messages advertisements to cellular telephones without the called party's "prior express consent."[2] 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines ATDS as "equipment which has the *capacity* . . . to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). The TCPA does not define "prior express consent" or "capacity."

---

[2] The elements for a TCPA claim are that: (1) a "call" was made; (2) using an ATDS; (3) the number called was assigned to a cellular telephone service; and (4) the "call" was not made with the "prior express consent" of the receiving party. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

2

### 2. *The GroupMe Petition to FCC*

On March 1, 2012, GroupMe[3] petitioned the FCC for "clarification" regarding both GroupMe's duty to obtain prior express consent from consumers as well as whether the equipment used for transmission of the text messages at issue falls within the TCPA's definition of ATDS. As to the first issue, because the TCPA does not define the phrase "prior express consent," GroupMe seeks clarification on whether the called party's oral prior express consent or a representation from an intermediary that they have obtained the requisite consent from the called party satisfy this requirement. As to the second issue, because the TCPA's definition of ATDS does not define the term "capacity," GroupMe seeks a clarification on whether the term "capacity" as used in the definition for ATDS means a theoretical, potential capacity to auto-dial, albeit only after a significant re-design of the software, or rather the actual, existing capacity of the equipment at the time of use, could, in fact, have employed the functionalities described in the TCPA.

## II. THE DOCTRINE OF PRIMARY JURISDICTION

Defendants here have moved for a stay pending resolution of the FCC Petition under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction allows a court to stay a proceeding or dismiss a complaint pending the resolution "of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Primary jurisdiction applies in a limited set of circumstances, "only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a

---

[3] GroupMe offers a group texting service similar to Defendants. GroupMe is currently a defendant in a putative class action under the TCPA before Judge Hamilton. *See Glauser et al. v. Twilio, Inc. and GroupMe, Inc.*, C-11-02584 (N.D. Cal.).

The *Twilio* action is currently stayed pending resolution of a petition before the FCC. The stay initially was entered because three pertinent issues were before the FCC: (1) comments received by the FCC requested clarification on the requirements for obtaining prior express consent and (2) what qualifies as an ATDS; and, in a separate petition, (3) whether a text message service provider qualifies as a common carrier exempt from TCPA liability. *Twilio* is at the pleadings stage and a determination of the first two issues is relevant to resolving GroupMe's motion to dismiss, while a determination of the third is relevant to resolving Twilio's motion to dismiss.

The FCC released a 2012 report, which left unchanged its definitions for prior express consent and what qualifies as an ATDS. After FCC released its report, the plaintiffs in *Twilio* sought to lift the stay as to GroupMe only. GroupMe filed the aforementioned petition and requested that Judge Hamilton continue the stay. Judge Hamilton determined that as a matter of judicial administration it would be inefficient to proceed against one defendant but not another, so she stayed the entire action pending a ruling on Twilio's petition. Judge Hamilton made clear that continuing the stay was "not based on GroupMe's filing of the subsequent petition." RJN Ex. 7.

3

regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id*. (internal citations and quotations omitted). Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," *Davel Comm'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006), the Ninth Circuit has considered whether (1) the issue is within the "conventional experiences of judges" or "involves technical or policy considerations within the agency's particular field of expertise," (2) the issue "is particularly within the agency's discretion," and (3) "there exists a substantial danger of inconsistent rulings." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. 2011).[4] The Court also must balance the parties' need to resolve the action expeditiously against the benefits of obtaining the federal agency's expertise on the issues. *Nat'l Comm'ns Ass'n, Inc. v. A. T. & T. Co.*, 46 F.3d 220, 223 (2d Cir. 1995) (cited in *Maronyan*, *supra*, 658 F.3d at 1049).

## III.   DISCUSSION

After a review of the relevant factors, the Court declines to apply the doctrine of primary jurisdiction here. The issues concerned are ones either a court or an agency would be competent to decide. Indeed, Defendants do not dispute that the courts and the FCC have interpreted these terms in the past. Although Defendants contend that the issues are now directly in front of the FCC, the Court is not convinced that the FCC has agreed to issue a ruling, let alone issue a ruling on an expedited basis.

> *1.   Whether the issues are within the "conventional experiences of judges" or involve "technical or policy considerations within the agency's particular field of expertise"*

A district court is suited to resolve issues of statutory interpretation of the phrase "prior express consent" and the term "capacity." While the doctrine of primary jurisdiction may be invoked in cases involving statutory interpretation, such situations typically involve resolution of an issue of first impression, or of a particularly complicated issue best resolved by the administrative agency. *See Clark*, *supra*, 523 F.3d at 1114 (finding primary jurisdiction applied where claim raised issue of first

---

[4] In determining whether the doctrine of primary jurisdiction applies, the Ninth Circuit also has considered: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark*, *supra*, 523 F.3d at 1115 (citing *Syntek Semiconductor Co., Ltd., v. Microchip Tech. Corp.*, 307 F.3d 775, 781 (9th Cir. 2002))

4

impression as to "whether VoIP services should be classified as 'telecommunications services' or 'information services'"; FCC was actively considering the issue; and Congress specifically delegated responsibility to FCC to determine the issue) (citing *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781-82 (9th Cir. 2002) (referring a claim to the Registrar of Copyrights where it presented an issue of first impression as to "whether decompiled object code qualifies for registration as source code under the Copyright Act and regulations" and where the issue was one "Congress has committed to the Registrar of Copyrights")). Interpretation of these statutory terms do not require the FCC's policy expertise or specialized knowledge and are matters safely within the conventional experience of judges. Indeed, courts and the FCC have interpreted these statutory terms in the past. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (focus must be on the equipment's capacity to store, produce, or call randomly or sequentially generated telephone numbers, not whether the equipment actually did these things). Accordingly, this factor does not weigh in favor of granting Defendants' request for a stay.

   *2.     Whether the issues are "particularly within the agency's discretion"*

The parties agree that the issues raised by the GroupMe petition – what qualifies as an ATDS subject to the TCPA and the requirements for obtaining valid prior express consent under the TCPA – both fall within the jurisdiction of the FCC generally. However, Plaintiffs argue the matter is not solely within FCC discretion. They contend that courts and the FCC have interpreted the terms "consent" and "capacity" in the past and both courts and the FCC have interpreted meanings of the terms consistently. Pls. Opp'n 11, 14.

Matters particularly within the agency's discretion tend to be ones in which Congress has explicitly delegated the responsibility. For example, in *Clark*, *supra*, "Congress ha[d] specifically delegated the responsibility to the FCC to define 'slamming' violations."[5] 523 F.3d at 1114. Here, by contrast, Congress has defined the term "automatic telephone dialing system." Although Defendants argue that the term "capacity" within the definition for ATDS and the phrase "prior express consent" are not defined in the TCPA, Congress has not placed this task terms particularly within the agency's

---

[5] "Slamming" is the practice where a telecommunications carrier switches a consumer's telephone service without the consumer's consent. *Clark*, *supra*, 523 F.3d at 1112; 47 U.S.C. § 258 (illegal changes in subscriber carrier selections).

discretion. *Cf.* 47 U.S.C. § 227(b)(2)(C) (discretion to determine whether to exempt certain calls to cellular telephones from the TCPA). Accordingly, this factor does not weigh in favor of granting Defendants' request for a stay.

### 3. *Whether there is "a substantial danger of inconsistent rulings"*

The Court does not see any danger of inconsistent rulings if the matter is not stayed. First, the issues raised in the GroupMe petition do not appear to be issues raised by Defendants in this litigation. Second, even if the GroupMe petition raises issues pertinent to this litigation, the issues are not presently before the Court and likely will not be before the Court for at least six months. If correct that the FCC is "poised" to rule on these issues, the FCC will have resolved the matter before the Court decides the issues. That said, Defendants offer insufficient evidence that the FCC will take up those issues immediately.

#### a) *There is no need for the Court to resolve issues not squarely before it.*

The GroupMe petition seeks clarification on whether oral confirmation or confirmation through an intermediary satisfies the prior express consent requirement. Defendants do not contend that they obtained consent orally or through an intermediary. Rather, it is Defendants' position that they obtained the required "prior express consent" either directly, when the consumers signed up for the Disco service and agreed to the terms and conditions, or indirectly, when the group creator inputted the consumers' phone numbers. Furthermore, Plaintiffs allege they gave neither written nor oral consent, nor any other conceivable form of consent to anyone, to be added to a texting group to receive text message solicitations from Defendants. Pls.' Opp'n 10. Thus, a stay pending resolution of GroupMe's petition will not aid in resolution of any issue related to the meaning of "prior express consent" in this case.

Furthermore, it is Defendants' position that their equipment did not have the "capacity" to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers. By way of its petition to the FCC, GroupMe seeks clarification on whether the term "capacity" used in the definition for ATDS means theoretical, potential capacity. It is not Defendants' position that their equipment has the theoretical capacity to perform such functions. Thus, the GroupMe petition does not address any issue related to definition of the term "capacity" that

6

is pertinent to this litigation.

### b) *If the FCC takes up GroupMe's petition on an expedited basis, then a stay will be unnecessary to prevent inconsistent rulings.*

To the extent that the issues raised by the GroupMe petition may come to bear on this litigation, there is no risk of inconsistent rulings. The deadline for summary judgment motions to be heard is October 30, 2012. Jury trial is set to commence on February 19, 2013. If, as Defendants represent, the FCC is poised to rule on these issues, then the FCC will have made a decision before the issues are presented to the Court or a jury. At this point, however, the Court has not been asked to define these terms and if the FCC actually is poised to rule on the issues, then the Court will not need to decide these issues. However, the parties need to conduct discovery to obtain the facts and expert opinions necessary, so that once these issues are decided by the FCC or the Court, the Court can apply the undisputed facts to the law on motion for summary judgment, or a jury can find those facts at a trial on the merits. A stay will not permit the parties to obtain the discovery necessary to resolve the factual disputes Defendants raise in their Answer and Affirmative Defenses.

### c) *There is no indication that the FCC will take up these issues.*

Finally, the Court is reluctant to stay this proceeding pending a determination by the FCC since there is no indication that the FCC has taken up or will take up the issues. If GroupMe's petition for expedited ruling is acted upon, then the parties can bring it to the Court's attention. The Court leaves open the possibility that after further discovery and development of the factual record, deferral to the FCC may be appropriate. At this point, however, it is not necessary or appropriate to stay the action under the doctrine of primary jurisdiction.

## IV. CONCLUSION

Based on the foregoing analysis, the Court declines to stay this action under the doctrine of primary jurisdiction. Therefore, Defendants' Motion to Stay is **DENIED**.

This Order terminates Docket Number 64.

**IT IS SO ORDERED.**

Dated: April 26, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**