SEAN P. REIS (SBN 184044)
(sreis@edelson.com)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Phone: 949.459.2124

JAY EDELSON (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE (Admitted *Pro Hac Vice*)
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Drive, Suite 1300
Chicago, IL 60654
Phone: 312.589.6370

[Additional counsel appearing on signature page.]

*Attorneys for Plaintiffs NICOLE PIMENTAL
and JESSICA FRANKLIN and the Putative Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| NICOLE PIMENTAL and JESSICA FRANKLIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOOGLE INC., a Delaware corporation, and SLIDE, INC., a Delaware corporation,<br><br>*Defendants*. | No. 11-cv-02585-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date: November 13, 2012<br>Time: 2:00 p.m.<br>Honorable Yvonne Gonzales Rogers |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE THAT** on November 13, 2012, at 2:00 p.m., or as soon

thereafter as this matter may be heard, Plaintiffs Nicole Pimental and Jessica Franklin will appear,

through counsel, before the Honorable Yvonne Gonzales Rogers, or any judge sitting in her stead,

at the United States District Court for the Northern District of California, Oakland Division,

located at 1301 Clay Street, Oakland, California 94612, and then and there move the Court for an

Order (i) granting preliminary approval of the Parties' proposed class action settlement, (ii)

certifying the proposed Settlement Class for settlement purposes only, (iii) approving the form and

content of the notice to the members of the proposed Settlement Class, (iv) appointing Plaintiffs as

Class Representatives, (v) appointing Plaintiffs' counsel as Class Counsel, and (vi) scheduling a

Fairness Hearing in this matter.

    Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities

filed herewith, the exhibits attached thereto, and the record in this matter, along with any oral

argument that may be presented to the Court and evidence submitted in connection therewith.

Dated:  October 5, 2012            Respectfully submitted,

                                   **NICOLE PIMENTAL and JESSICA FRANKLIN**,
                                   individually and on behalf of all others similarly situated,

                                   By:    /s/ Rafey S. Balabanian
                                         One of Plaintiffs' Attorneys

JAY EDELSON (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE (Admitted *Pro Hac Vice*)
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Drive, Suite 1300
Chicago, IL 60654
Phone: 312.589.6370

SEAN P. REIS (SBN 184044)
(sreis@edelson.com)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Phone: 949.459.2124

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     NATURE OF THE LITIGATION .......................................................................2

    A.      Summary of the Litigation, Mediation & Settlement ...........................2

    B.      Defendants' Position ..................................................................................5

III.    TERMS OF THE SETTLEMENT ........................................................................5

    A.      Class Definition ..........................................................................................5

    B.      Class Member Payments ...........................................................................5

    C.      *Cy Pres* Distribution ..................................................................................5

    D.      Additional Relief ........................................................................................6

        1.      *Payment of Notice and Administrative Fees* ................................6

        2.      *Compensation for the Class Representatives* ...............................6

        3.      *Payment of Attorneys' Fees and Expenses* ..................................6

    E.  Release ........................................................................................................6

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED .................7

    A.      The Numerosity Requirement is Satisfied ...............................................7

    B.      The Commonality Requirement is Satisfied ............................................8

    C.      The Typicality Requirement is Satisfied ..................................................9

    D.      The Adequate Representation Requirement is Satisfied ......................10

    E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ....11

        1.      *Common Questions of Law and Fact Predominate* ...................12

        2.      *The Class Action is the Superior Method of Adjudication* ...................13

V.      THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL ............................................................................................................14

VI.     THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL .................................................................................14

VII.    CLASS COUNSEL'S FEE REQUEST AND PLAINTIFFS' INCENTIVE AWARDS ..........................................................................................18

VIII.   THE PROPOSED PLAN OF CLASS NOTICE ...............................................18

IX.     CONCLUSION ....................................................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)..........................................................7, 12, 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...............................................................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)...........................................................8, 9

**United States Circuit Court of Appeals Cases:**

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................8, 9, 10, 12, 15

*In Re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2009) ................18

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)........................................15

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)........................................14, 15

*Lane v. Facebook, Inc.*, No. 10-16380, 2012 WL 4125857 (9th Cir. Sept. 20, 2012)................17

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011).................................................17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ....................15

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008)....................................................8

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) .......................................12

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ....................................7

*Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168 (9th Cir. 2010)...................9, 13

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010)....................13

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .........................11

**United States District Cases:**

*Algee v. Nordstrom, Inc.*, No. C 11-301 CW MEJ, 2012 WL 1575314
(N.D. Cal. May 3, 2012)........................................................................................8

*CE Design v. Beaty Constr. Inc.*, No. 07 C 3340, 2009 WL 192481
(N.D. Ill. Jan. 26, 2009)........................................................................................12

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ...................................7

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ............13

*Clearbrook v. Rooflifters, LLC*, No. 08 C 3276, 2010 WL 2635781
(N.D. Ill. June 28, 2010)........................................................................................10

*G.M Sign, Inc. v. Group C Commc'ns, Inc.*, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010)..............9

*Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009)......................10

*Hopkins v. Stryker Sales Corp.*, No. 5:11-CV-02786-LHK, 2012 WL 1715091
(N.D. Cal. May 14, 2012)........................................................................................8

*In re Facebook Privacy Litig.*, (10-cv-02389-JW) (N.D. Cal. Dec. 10, 2010)...............................11

*In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litig.*,
No. 10-cv-3647, MDL 2167 (N.D. Ill. 2010) ............................................................................11

*In re Netflix Privacy Litigation*, 11-cv-00379-EJD (N.D. Cal. 2011) ...........................................11

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................14, 15

*Kazemi v. Payless Shoesource, Inc.*, No. CV09-5142 (N.D. Cal. 2012)..................................2, 16

*Kramer v. Autobytel,* No. 10-cv-2722 (N.D. Cal. 2011) ...........................................2, 11, 14, 16

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-6344 (N.D. Ill. 2011)........2, 11, 14, 16

*Moshogiannis v. Sec. Consultants Group, Inc.*, No. 10-CV-05971 EJD,
2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ..................................................................................7

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08 C 5959, 2010 WL 4931001
(N.D. Ill. Nov. 29, 2010) ...............................................................................................................9

*Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.) ...............................2,11, 13, 16

*Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385
(N.D. Cal. Apr. 21, 2011) ............................................................................................................15

*Weinstein, et al. v. The Timberland Company,* No. 06-cv-0454 (N.D. Ill.) .................................16

**Statutes**

Fed. R. Civ. P. 23...............................................................................................................*passim*

28 U.S.C § 1715 ......................................................................................................................20

47 U.S.C. § 227, *et seq* ...........................................................................................................*passim*

**Miscellaneous:**

Conte & Newberg, 4 Newberg on Class Actions (4th ed. 2002)..........................8, 14, 15, 19

Manual for Complex Litigation (3d ed. 1995) ...............................................................14, 15

Manual for Complex Litigation (4th ed. 2004) ....................................................................7

## I.    INTRODUCTION

Plaintiffs Nicole Pimental's and Jessica Franklin's claims in this putative class action arise out of Defendants Google Inc.'s and Slide, Inc.'s design and deployment of a group text messaging service—the so-called "Disco" service—that Plaintiffs contend resulted in hundreds of thousands of consumers receiving unauthorized and unwanted text message spam.  This conduct, Plaintiffs allege, violates the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

After more than a year's worth of litigation, which included briefing on several substantive motions, formal and informal discovery, several conferences of counsel and arm's-length negotiations culminating in a private mediation presided over by a third-party neutral, the Parties have reached a proposed class action settlement that, if approved by the Court, will finally resolve all claims against Defendants related to their alleged violations of the TCPA. As explained below, the relief afforded under the settlement is a tremendous result for the proposed Settlement Class.[1]

Under the terms of the settlement, Defendants have agreed to create a cash Settlement Fund in the amount of $6,000,000 from which Settlement Class Members can make claims for a *pro rata* share of the Fund after payment of all Settlement Administration Expenses, incentive awards to the Class Representatives, and the Fee Award, if any, to Class Counsel.  Each Settlement Class Member's *pro rata* share is anticipated to be, but can't exceed, five hundred dollars ($500)—the full amount of the statutory penalty provided under the TCPA.  The Fund will also be used to pay all notice and claims administration expenses, attorneys' fees and costs, and incentive awards to the Plaintiffs.  Also, of particular importance is the fact that there is no reversionary aspect to this settlement, meaning that if the full amount of the Fund is not exhausted, any remaining monies will go towards a *cy pres* distribution to independent not-for-profits agreed upon by the Parties, with the approval of the Court.  Finally, Defendants have shut down the Disco

---

[1]      Unless otherwise stated herein, capitalized terms shall have the same meaning as set forth in the Parties' Class Action Settlement Agreement, attached as Exhibit 1.

1 service, so consumers will no longer be subjected to the unauthorized and unwanted text messages

2 that gave rise to this suit.

3    The fairness of this settlement can also be measured by comparing it to settlements reached

4 in similar cases that received approval from federal courts across the country—most often in the

5 Northern District of California—where individual payments to class members were less than the

6 potentially $500 available here. *See e.g. Kramer v. Autobytel,* No. 10-cv-2722 (N.D. Cal. 2011)

7 (finally approving settlement creating $12.2 million settlement fund from which class of 42

8 million could claim up to $100 each); *Satterfield v. Simon & Schuster*, No. 06-cv-2893 (N.D. Cal.

9 2010) (finally approving settlement creating $10 million settlement fund from which class of

10 59,000 could claim up to $170 each); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-

11 6344 (N.D. Ill. 2011) (finally approving settlement creating $16 million settlement fund from

12 which class of 98,000 could claim up to $200 each); *Kazemi v. Payless Shoesource, Inc.*, No.

13 CV09-5142 (N.D. Cal. 2012) (finally approving settlement creating $6 million from which class

14 of 8.5 million could claim a $25 merchandise certificate).

15    All told, the settlement is an exceedingly fair result for the Class because, while Plaintiffs

16 are confident in the strength of their claims, they recognize the uncertainty attendant with class

17 action litigation of this sort, and especially given Defendants' ability and willingness to continue

18 their vigorous defense of this action.  As the results achieved by the settlement ultimately parallel,

19 if not exceed, those reached in other settlements involving similar claims under the TCPA—

20 settlements that have received the approval of courts in this District and throughout the country—

21 this class action settlement should thus be viewed as well within the range of approval.

22 Accordingly, Plaintiffs respectfully request that the Court grant the instant motion in its entirety.

23 **II.    NATURE OF THE LITIGATION**

24    **A.    Summary of the Litigation, Mediation & Settlement.**

25    In early 2011, Defendants Google and Slide jointly released a group text messaging service

26 known as "Disco" that allowed users to simultaneously communicate via text message with large

27 groups. (*See* Plaintiffs' Consolidated Complaint (Dkt. 24), cited as "Compl.", ¶¶ 11-13.) As

28

designed, the service was meant to allow groups of consumers to communicate with one another

concurrently, instead of having to send a single text message multiple times. (*Id.* ¶¶ 11, 17.) Thus,

using Disco, a single consumer could create a group, add the cell phone numbers of the persons

they wanted to communicate with, and then send one single message that would reach each

member of the group. (*Id.* ¶ 14.) However, there were serious problems with how the Disco groups

were formed, wherein a "group creator" registered with Disco, names a group, and then enters the

names and cellular telephone numbers of up to *ninety-nine* potential group members. (*Id.*) Group

creation was based on an "opt in" procedure, meaning that members were automatically made part

of a texting group simply by being added by the group creator, rather than being given the

opportunity to affirmatively choose to take part in the group. (*Id.* ¶ 16.) Once a texting group was

created, Defendants transmitted a text message containing promotional language and a link to

download their mobile application (the "Disco Mobile App Text").

On September 14, 2011, Plaintiffs Pimental and Franklin filed their Consolidated

Complaint alleging that they received unauthorized text message advertisements sent by or on

behalf of Defendants, specifically the Disco Mobile App Text, in violation of the TCPA. (Dkt.

24.)[2] Defendants responded with a motion to dismiss on October 14, 2011, (1) arguing that

Plaintiffs did not sufficiently allege that Defendants used an ATDS and therefore failed to state a

claim for relief under the TCPA, and (2) construing the TCPA so as to argue that prohibition of

the text messages at issue would violate Defendants' First Amendment rights because the text

messages were informational and "noncommercial" in nature. (Dkt. 29.) On March 2, 2012, the

Court denied Defendants' motion in its entirety. (Dkt. 59.)

While the Court considered the motion to dismiss, Plaintiffs served Defendants with their

---

[2]     The case was originally filed with a different putative class representative, Brett Lusskin, and Ms. Pimental was substituted as the named plaintiff on June 24, 2011. Shortly thereafter, Plaintiff Jessica Franklin brought a class action suit for Defendants' alleged violation of the TCPA based on the same conduct, and filed a Notice of Related Actions with her complaint. On September 22, 2011, the Court entered an order consolidating the related cases, appointing Interim Lead and Liaison Counsel, and authorizing the filing of Plaintiffs' Consolidated Complaint. (Dkt. 25.)

first sets of written discovery requests. Defendants initially objected to the requests altogether and sought a stay of discovery from the Court. Following extended (some in-person) meet and confer conferences and the Court's denial of the motion to dismiss, Defendants supplemented their discovery responses and produced several thousand pages of documents. Defendants later served their own written discovery requests, to which Plaintiffs responded.

At that same time, Defendants also filed a motion to stay the litigation based on a Petition for Expedited Declaratory Ruling and Clarification filed with the FCC by a defendant in a similar TCPA action. Defendants argued the litigation should be stayed under the doctrine of primary jurisdiction pending the FCC's resolution of the issues concerning the TCPA's "prior express consent" requirement and definition of an ATDS. While the Court ultimately denied that motion as well, it stated that "[i]f GroupMe's petition for expedited ruling is acted upon, then the parties can bring it to the Court's attention." (Dkt. 70.)  The FCC has since issued a Public Notice seeking comment on GroupMe's Petition. (Dkt. 73.)

From the outset of this case, the Parties discussed the possibility of resolution, but given that the litigation was contentious at the time, they could not reach a deal early on. Nevertheless, through their continued discussions and with the Court's rulings as a backdrop, the Parties ultimately decided to give mediation a chance before they embarked on the long road of class certification briefing. (*See* Declaration of Rafey S. Balabanian ¶ 3, attached as Exhibit 2.) Thus, on July 30, 2012, they met in San Francisco for a formal mediation with John Bates, Esq. of JAMS. After caucusing with each side for an entire day, the Parties eventually reached an impasse and were prepared to end the mediation. (*Id.* ¶ 4.) To overcome that final impasse, however, Mr. Bates offered to make a mediator's proposal, which both Parties agreed to consider and ultimately accepted. (*Id.*) The result was an agreement as to the principal terms of the settlement. (*Id.* ¶ 5.) Notwithstanding, it would take several more weeks of discussions to finalize the ancillary terms of the settlement and reduce it to writing in the form of the Parties' Class Action Settlement Agreement now before the Court. (*Id.* ¶ 5.) Plaintiffs now seek preliminary approval of the settlement.

**B.     Defendants' Position.**

At all times, Defendants have denied and continue to deny any wrongdoing whatsoever and have denied and continue to deny that they committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the Action. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendants have concluded that it is desirable and beneficial to them that this Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement.

**III.     TERMS OF THE SETTLEMENT**

The terms of the settlement are fully set forth in the Settlement Agreement attached hereto as Exhibit 1 and summarized as follows:

**A.     Class Definition.**

The Settlement Agreement provides for a Settlement Class defined as follows:

> All Persons who received the Disco Mobile App Text or other text messages sent by or through the Disco Messaging Service informing such Persons about the Disco Messaging Service.

(Ex. 1, § 1.4)

**B.     Class Member Payments.**

Defendants have agreed to create a cash Settlement Fund of $6,000,000 from which Class Members can make claims for a *pro rata* share of the Fund after payment of all Settlement Administration Expenses, incentive awards to the Class Representatives, and the Fee Award, if any, to Class Counsel.  Each Settlement Class Member's *pro rata* share is anticipated to be, but can't exceed, five hundred dollars ($500)—the full amount of statutory penalty provided under the TCPA. It is also noteworthy that Defendants have since terminated the service, and thus, consumers will no longer be subjected to the offending text messages.

**C.     *Cy Pres* Distribution.**

In the event that there are any monies remaining in the Settlement Fund after payment of all valid claims, Settlement Administration Expenses, the Fee Award and Plaintiffs' incentive awards, then such funds shall be paid to one or more not-for-profit organizations jointly nominated

by the Parties using the following criteria, and approved by the Court:

> **(a)** there must be no affiliation between the proposed recipient and any of the Parties or their Counsel, including Supporting Counsel; and

> **(b)** the recipient must use the money to promote the interests of the absent class members.

(Ex 1, § 2.4.) The Parties will post the proposed recipients on the Settlement Website no later than fourteen days prior to the Objection Deadline.

**D.    Additional Relief.**

In addition to the individual relief discussed above, Defendants have agreed to the following relief:

**1.    *Payment of Notice and Administrative Fees***: All Settlement Administration Expenses will be paid out of the Settlement Fund. (Ex. 1, § 1.43.)

**2.    *Compensation for the Class Representatives***: In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Settlement Class, Defendants have agreed to pay from the Settlement Fund, subject to approval of the Court, an incentive award of $5,000 to each of the Class Representatives. (Ex. 1, § 8.4.)

**3.    *Payment of Attorneys' Fees and Expenses***: Under the Settlement Agreement, Defendants have agreed not to oppose Class Counsel's requested Fee Award, subject to Court approval, of up to 1/3 of the Settlement Fund, inclusive of both attorneys' fees and costs. (Ex. 1, § 8.1.)

**E.    Release.**

In exchange for the relief provided above, and upon the entry of a final order approving the settlement, Defendants and each of their related affiliates and entities will be released from any claims, whether known or unknown, arising out of Defendants Google's and Slide's acts or omissions related to the alleged sending of the Disco Mobile App Text through the Disco Messaging Service, or a substantially similar text from Defendants that advertised Disco's mobile applications. (Ex. 1, §§ 1.32-1.34, 3.1-3.2.)

IV.    **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

Before granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is proper for certification for settlement purposes. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a class is proper when the plaintiff demonstrates that the proposed class and proposed class representative meet the following prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1-4).

In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class certification must also satisfy at least one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23(b); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). Where, as here, a plaintiff seeks certification under Rule 23(b)(3), he or she must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16; *Stearns*, 655 F.3d at 1019. In making the determination, the Court should accept the allegations of a plaintiff's complaint as true, but may consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007). In this case, the proposed Settlement Class meets each of the requirements for certification under Rule 23(a) and satisfies the requirements of Rule 23(b)(3) as well.

A.    **The Numerosity Requirement is Satisfied.**

The first prerequisite to class certification is numerosity, which requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No specific number is needed to satisfy this requirement, nor is the plaintiff required to state the "exact" number of potential class members. *Celano*, 242 F.R.D. at 548. Generally, the numerosity requirement is satisfied when a class is comprised of 40 or more members. *See Moshogiannis v. Sec. Consultants Group, Inc.*, No. 5:10-CV-05971 EJD, 2012 WL 423860, at *3 (N.D. Cal. Feb. 8, 2012) (holding that numerosity is satisfied by class of 254 members); *see also Hopkins v. Stryker Sales Corp.*, No. 5:11-CV-02786-LHK, 2012 WL 1715091, at *4 n.9 (N.D. Cal. May 14, 2012)

1   (numerosity satisfied by class of 130); *Algee v. Nordstrom, Inc.*, No. C 11-301 CW MEJ, 2012

2   WL 1575314, at *2 (N.D. Cal. May 3, 2012) (holding that a class of 60 individuals is sufficient).

3        Here, discovery has shown that over 400,000 SMS text messages were sent containing

4   language similar to the Disco Mobile App Text to approximately the same number of consumers.

5   (Balabanian Decl. ¶ 9.) Accordingly, the proposed Settlement Class is so numerous that joinder of

6   their claims is impracticable and the numerosity requirement is satisfied. *See* CONTE & NEWBERG,

7   4 NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended

8   Rule 23 have frequently involved classes numbering in the hundreds, or thousands. In such cases,

9   the impracticability of bringing all class members before the court has been obvious, and the Rule

10  23(a)(1) requirement has been easily met.").

11        **B.      The Commonality Requirement is Satisfied.**

12        The second threshold to certification requires that "there are questions of law or fact

13  common to the class." Fed. R. Civ. P. 23(a)(2). Commonality may be demonstrated when the

14  claims of all class members "depend upon a common contention" and "even a single common

15  question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2560 (2011); *see also Hanlon*

16  *v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) ("[t]he existence of shared legal issues

17  with divergent factual predicates is sufficient, as is a common core of salient facts coupled with

18  disparate legal remedies within the class."). The common contention must be of such a nature that

19  it is capable of class-wide resolution and that the "determination of its truth or falsity will resolve

20  an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 131 S.

21  Ct. at 2560. Moreover, the permissive standard of commonality provides that "[w]here the

22  circumstances of each particular class member vary but retain a common core of factual or legal

23  issues with the rest of the class, commonality exists." *Parra v. Bashas' Inc.*, 536 F.3d 975, 978-79

24  (9th Cir. 2008).

25        In the instant case, all members of the Settlement Class share a common statutory claim

26  under the TCPA that arose out of the Defendants' standardized conduct – the transmission of the

27  Disco Mobile App Text to Settlement Class Members' cellular phones through the Disco

28

1   messaging service. The entirety of the Settlement Class's claims can be resolved by determining

2   (a) whether Defendants sent the Disco Mobile App Text messages, (b) whether Defendants

3   received and maintained proof of prior express consent to transmit text messages to the Settlement

4   Class, (c) whether the equipment used to send the offending text messages was an ATDS as

5   defined by the TCPA, (d) whether Defendants did so knowingly and willfully, and (e) whether

6   Plaintiffs and the Settlement Class Members are entitled to statutory relief as a result of that

7   conduct. Answering these questions "in one stroke" would effectuate "class wide resolution."

8   *Wal-Mart,* 131 S. Ct. at 2560. Thus, Plaintiffs have satisfied the commonality requirement.

9   Indeed, several courts have found that the commonality requirement is easily satisfied in TCPA

10   cases where, as here, the same unauthorized communication is transmitted by defendants to a list

11   of consumer phone numbers. *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash.

12   2007); *G.M Sign, Inc. v. Group C Commc'ns, Inc.*, 2010 WL 744262, at *5 (N.D. Ill. Feb. 25,

13   2010); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08 C 5959, 2010 WL 4931001,

14   at *2 (N.D. Ill. Nov. 29, 2010).

15        Accordingly, Rule 23(a)'s commonality requirement is satisfied as well.

16        **C.        The Typicality Requirement is Satisfied.**

17        Rule 23 next requires that the representative plaintiff's claims be typical of those of the

18   putative class he or she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement

19   ensures that "the interest of the named representative aligns with the interests of the class." *Wolin*

20   *v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is measured

21   under a permissive standard and does not require that the representative's claims be substantially

22   identical, only that they are "reasonably coextensive with [the claims] of absent class members."

23   *Hanlon*, 150 F.3d at 1020.

24        In the instant action, Plaintiffs Pimental's and Franklin's claims are identical to those of

25   the proposed Settlement Class. Plaintiffs have both pleaded that they received the Disco Mobile

26   App Text from Defendants, without prior express consent, and were damaged as a result—

27   qualifying them both as members of the Class. (Compl. ¶¶ 25-37.) As such, Plaintiffs' claims for

28

1   relief under the TCPA are typical of (and, in reality, identical to) those of the proposed Class, and

2   23(a)(3)'s requirement for typicality is easily met. *See e.g. Holtzman v. Turza,* No. 08 C 2014,

3   2009 WL 3334909, *5 (N.D. Ill. Oct. 14, 2009) (finding typicality met where plaintiff's number

4   appeared on a fax log and where defendant's identical conduct resulted in each class member's

5   claim.); *Clearbrook v. Rooflifters, LLC*, No. 08 C 3276, 2010 WL 2635781, at *3 (N.D. Ill. June

6   28, 2010) ("The organized fashion of obtaining thousands of [cell phone] numbers through one

7   third-party source makes the issue of consent typical to all the class members").

8           **D.      The Adequate Representation Requirement is Satisfied.**

9           The final Rule 23(a) prerequisite requires that proposed class representatives have and will

10  continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To

11  determine if representation is adequate, the Court must ask "(1) do the named plaintiffs and their

12  counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

13  and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at

14  1020.

15          In this case, Plaintiffs have the same interests as the other members of the proposed

16  Settlement Class—they and each Settlement Class Member received unauthorized promotional

17  text messages sent by or on behalf of Defendants, entitling them to statutory damages under the

18  TCPA. Thus, they each have an interest in recovering the statutory damages to which they are

19  entitled and in obtaining the prospective relief necessary to ensure that Defendants' alleged

20  misconduct does not continue into the future. Furthermore, Plaintiffs have no interests antagonistic

21  to those of the proposed Settlement Class. (Balabanian Decl. ¶ 11.) As such, Plaintiffs will fairly

22  and adequately protect the interests of the Settlement Class and their pursuit of this case

23  demonstrates as much.

24          Further, proposed Class Counsel and the lawyers at Edelson McGuire are well-respected

25  members of the legal community who have extensive experience in class actions of similar size,

26  scope, and complexity to the instant action. (*Id.* ¶ 10.) They have regularly engaged in major

27  complex litigation involving mobile technologies, have the resources necessary to conduct

28

litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*See* Firm Resume of Edelson McGuire LLC, attached to the Balabanian Declaration as Exhibit A); *In re Netflix Privacy Litigation*, 11-cv-00379-EJD (Dkt. 59) (N.D. Cal. 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which Judge Davila noted that Edelson McGuire "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class."); *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litig.*, No. 10-cv-3647, MDL 2167 (Dkt. 37) (N.D. Ill. 2010) (appointed Interim Co-Lead Class Counsel in multidistrict litigation involving Chase's HELOC suspensions based on purported declines in borrower home values); *In re Facebook Privacy Litig.*, (10-cv-02389-JW) (Dkt. No. 69) (N.D. Cal. Dec. 10, 2010) (Judge Ware, in appointing co-lead counsel, noted that Edelson McGuire's lawyers "were pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue").

Most importantly, proposed Class Counsel are among the leading attorneys in the nation with respect to prosecuting class actions related to the alleged dissemination of unauthorized text messages in violation of the TCPA. *See Satterfield*, No. 06-cv-2893 CW (N.D. Cal. 2010) (appointed Class Counsel in nationwide class action settlement of TCPA claims), *Kramer*, No. 10-cv-2722 (N.D. Cal. 2011) (same); *Lozano*, No. 09-CV-6344 (N.D. Ill. 2011) (same). As they did in each of those cases, to date, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this Action, and they will continue to do so throughout its pendency. (Balabanian Decl. ¶ 8.)

Accordingly, Plaintiffs and their counsel have and will continue to adequately represent the Settlement Class and the final Rule 23(a) requirement is satisfied.

**E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).**

Once Rule 23(a)'s prerequisites have been met, Plaintiffs must also demonstrate that the proposed Settlement Class satisfies one of the three subsections of Rule 23(b). *Zinser v. Accufix*

*Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. County of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

### 1.   *Common Questions of Law and Fact Predominate.*

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. Common legal and factual issues have been found to predominate where the class members' claims arose under the TCPA, *Grannan v. Alliant Law Group, P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *5 (N.D. Cal. Jan. 24, 2012), and where the TCPA claims focused on the defendant's advertising practices. *CE Design v. Beaty Constr. Inc.*, No. 07 C 3340, 2009 WL 192481, at *8-9 (N.D. Ill. Jan. 26, 2009).

In this case, the common questions are at the heart of this litigation. The Settlement Class Members' claims—as well as those of Plaintiffs Pimental and Franklin—all arise from Defendants' standardized conduct of sending unauthorized text messages promoting their Disco messaging service. Thus, the core factual and legal issues are the same (*i.e.*, predominate) for each Settlement Class Member. That is, in order to prove their claims, each Class Member need only show that (i) the Disco Mobile App Text message promoting Defendants' Disco messaging service was transmitted by and on behalf of Defendants, (ii) the system used to transmit the messages was an ATDS, and (iii) Defendants did not obtain the requisite "prior express consent" to send the messages. Thus, their claims will be subject to common proofs applicable to the

1  Settlement Class as a whole, and the common questions resulting from Defendants' alleged

2  misconduct predominate over any issues affecting only individual members of the Settlement

3  Class, such as the amount of damages each Class Member is entitled to recover. *See, e.g.,*

4  *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (holding that "[in]

5  this circuit … damage calculations alone cannot defeat certification").

     **2.**  *This Class Action is the Superior Method of Adjudication.*

7     Finally, certification of this lawsuit as a class action is superior to other methods available

8  to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. To meet

9  the superiority requirement, a plaintiff must show that a class action is the "most efficient and

10  effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76.

11     Absent class treatment here, each Settlement Class Member will be required to present the

12  same or essentially the same legal and factual arguments, in separate and duplicative proceedings,

13  the result of which would be a multiplicity of trials conducted at enormous expense to both the

14  judiciary and the litigants. Moreover, there is no indication that members of the Settlement Class

15  have an interest in individual litigation or an incentive to pursue their claims individually, given

16  the small amount of damages likely to be recovered relative to the resources required to prosecute

17  such an action. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal.

18  2010) (holding that a class action is superior to maintaining individual claims for a small amount

19  of damages). Additionally, the proposed settlement will give the Parties the benefit of finality, and

20  because this action has now been settled, pending approval of the Court, the Court need not be

21  concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620

22  ("[c]onfronted with a request for settlement-only class certification, a district court need not

23  inquire whether the case…would present intractable management problems…."). Thus, the

24  superiority requirement is also met.

25     Finally, the propriety of class certification finds further support in the fact that numerous

26  courts in this District and nationwide have certified settlement classes based on similar facts. *See*

27  *Satterfield*, No. 06-cv-2893 CW (N.D. Cal. 2010), *Kramer*, No. 10-cv-2722 (N.D. Cal. 2011);

28

*Lozano*, No. 09-CV-6344 (N.D. Ill. 2011).  As in those cases, Plaintiffs here have satisfied each of the requirements for class certification under Rules 23(a) and (b)(3).  The Court should therefore certify the proposed Settlement Class for settlement purposes.

## V.      THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. (Balabanian Decl. ¶ 10.) Further, proposed Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the investigation of those claims, and have successfully negotiated the settlement of this matter to the benefit of the proposed Settlement Class. (*Id.*) Accordingly, the Court should appoint Jay Edelson, Rafey S. Balabanian, and Christopher L. Dore of Edelson McGuire LLC as Class Counsel.

## VI.     THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL

After certifying the proposed Class for the purposes of settlement, the Court must next consider whether to grant preliminary approval of the settlement. The procedure for review of a proposed class action settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* CONTE & NEWBERG, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 3839 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." NEWBERG, §11.25, at 3839 (*quoting* MANUAL FOR COMPLEX LITIGATION §30.41 (3d ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). This

hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the putative Class members of the proposed settlement and to proceed with a fairness hearing. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Notice of a settlement should be sent where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentation from the settling parties. MANUAL FOR COMPLEX LITIGATION § 21.632. Ultimately, the court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100. If the Court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. NEWBERG, §11.25, at 3839.

A strong judicial policy exists in favor of the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). A settlement negotiated with the assistance of an experienced private mediator is further proof that that the settlement was reached fairly and provides adequate relief. *Thieriot v. Celtic Ins. Co.,* No. C-10-04462-LB, 2011 WL 1522385, *5 (N.D. Cal. Apr. 21, 2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediator at JAMS . . . In sum, the court finds that viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" such

1  that approval of the settlement is warranted.").

2      There should be no doubt that the proposed settlement here is "within the range of possible

3  approval." As an initial matter, the process used to reach the settlement was fair. That is, despite

4  their many discussions regarding potential resolution, the Parties were only able to reach a

5  settlement with the assistance of mediator John Bates. (Balabanian Decl. ¶ 4.) Likewise, they

6  agreed on the terms of the settlement through experienced counsel, who ensured they had the

7  information necessary to evaluate the terms of any proposed agreement and to reach a fair and

8  reasonable compromise. (*Id*. ¶ 6.) Indeed, prior to the mediation and in addition to their own

9  investigation, proposed Class Counsel reviewed thousands of pages of documents produced by

10  Defendants in discovery. That information shed further light on the contours of the proposed Class

11  and Defendants' transmission of the text messages at issues, and, ultimately, informed the terms of

12  the settlement now before the Court. (*Id*.)

13      The fairness, reasonableness, and adequacy of the substantive terms of the settlement are

14  also readily apparent. Specifically, each Settlement Class Member stands to recover a *pro rata*

15  share of the Settlement Fund (not to exceed $500)—the full amount of statutory damages to which

16  they are entitled under the TCPA. In other words, the settlement provides Class Members the full

17  amount of relief they could hope to obtain, even if successful at trial. The Court need not take

18  Plaintiffs' word for it though; as shown in the chart below courts throughout the country—most

19  often in the Northern District of California—have approved class action settlements reached in

20  similar cases alleging violations of the TCPA, even where individual payments to class members

21  were less than the potentially $500 available here.

| Case Name | Class Size | Per Class Member Payment | Total Settlement Fund |
|---|---|---|---|
| *Weinstein v. The Timberland Co., et al.* (N.D. Ill. 2008) | 40,000 | $150 | $7 million |
| *Satterfield v. Simon & Schuster* (N.D. Cal. 2010) | 59,000 | $175 | $10 million |
| *Lozano v. Twentieth Century Fox* (N.D. Ill. 2011) | 98,000 | $200 | $16 million |
| *Kramer v. Autobytel* (N.D. Cal. 2011) | 42,000,000 | $100 | $12.2 million |
| *Gutierrez, et al. v. Barclays Group, et al.* (S.D. Cal. 2012) | 66,000 | $100 | $8.2 million |
| *Kazemi v. Payless Shoesource* (N.D. Cal. 2012) | 8,500,000 | $25 merchandise certificate | $6 million (in merchandise certificates) |

The present settlement exceeds the individual recovery made available to each class member in the settlements listed above, and it has the added benefit of a full payout, meaning that no part of the Fund will revert to the Defendants.  Specifically, if after payment of all valid claims, notice and claims administration expenses, attorneys' fees, and the incentive awards to the Plaintiffs, the entire Settlement Fund is not exhausted, any remaining monies will go toward a *cy pres* distribution to one or more independent not-for-profits agreed upon by the Parties, with the approval of the Court.

A *cy pres* distribution is a reasonable and widely accepted settlement vehicle for unclaimed funds. See *Lane v. Facebook, Inc.*, No. 10-16380, 2012 WL 4125857, at *4 (9th Cir. Sept. 20, 2012) ("A *cy pres* remedy . . . is a settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment."). As is the case here, distributing unclaimed funds to a *cy pres* recipient, rather than having them revert back to the defendant, "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011).

The Ninth Circuit recently proclaimed that to warrant approval, the *cy pres* remedy must "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachshin*, 663 F.3d at 1036. In the present case, and in accordance with federal law, the Settlement Agreement requires that any *cy pres* distribution account for the nature of the Plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members. The Parties have agreed to present the proposed *cy pres* recipients to the Court for approval, as well as post the proposed recipients on the Settlement Website prior to the objection deadline to allow putative Class Members an opportunity to weigh in on a potential distribution.

Given the meaningful relief afforded under the settlement, and notwithstanding Plaintiffs' belief in the strength of their claims, the expense, duration, and complexity of protracted litigation must be given due consideration.  Similarly, in light of the complexity of the issues and the

amount in controversy, the defeated party would likely appeal, which would further delay any recovery by the Settlement Class. (*Id*.)  And, there is even potential for proceedings in other forums like the FCC, which could, in theory, bring this case to a halt.

For all of these reasons, Plaintiffs and proposed Class Counsel strongly believe that the monetary and prospective relief provided by the settlement weighs heavily in favor of a finding that it is fair, reasonable and adequate and within the range of approval. Accordingly, the Court may grant preliminary approval of the settlement.

## VII.   CLASS COUNSEL'S FEE REQUEST AND PLAINTIFFS' INCENTIVE AWARDS

The Parties' Settlement Agreement sets forth that Plaintiffs' counsel will seek, and Defendants will not oppose, up to one third of the Settlement Fund ($2,000,000) in attorneys' fees and reimbursement of costs, and Plaintiffs' collective incentive award of five thousand dollars ($5,000). For the sake of clarity, those are the maximum amounts for which the Parties agreed Class Counsel could petition the Court for an award of attorneys' fees and incentive awards. While proposed Class Counsel does intend to seek those amounts in attorneys' fees and incentive awards, the information is being presented at this juncture only to fully apprise the Court of the full terms of the settlement.  Thus, the Court need not make a determination as to the reasonableness of the proposed request at this time.

Instead, in accordance with the Ninth Circuit's ruling in *In Re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2009), Plaintiffs' counsel will move the Court one week prior to the objection deadline for approval of their fee request and Plaintiffs' incentive award and will post their request—and the justification for it—to the settlement website. In so doing, Plaintiffs' counsel will present fulsome arguments in support of their fee petition and request for incentive awards and, in line with Ninth Circuit precedent when demonstrating the reasonableness of the requested fees, will conduct both a percentage of the benefit analysis and a lodestar cross-check.

## VIII.   THE PROPOSED PLAN OF CLASS NOTICE

Finally, Rule 23(b)(3) requires that in cases such as this, where the relief sought includes monetary damages and class certification is requested, notice must be disseminated to the

proposed class. To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B)

provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members

the best notice practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that, "[t]he court must direct

notice in a reasonable manner to all class members who would be bound by a proposed settlement,

voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be

understood by the average class member." NEWBERG, § 11:53 at 167. The substance of the notice

to the settlement class must describe the nature of the action, the definition of the class to be

certified, the class claims and defenses at issue, as well as explain that settlement class members

may enter an appearance through counsel if so desired, request to be excluded from the settlement

class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R.

Civ. P. 23 (c)(2)(B).

The Parties' settlement contemplates a three-part Notice Plan, which satisfies both the

substance and manner of distribution requirements of Rule 23 and Due Process. In the first step,

Settlement Administrator Epiq Systems will use the cellular phone numbers of Settlement Class

Members—found in Defendants' records—for a reverse look-up process to identify each

Settlement Class Member's mailing address. Once the addresses have been compiled, direct notice

via post-card—substantially in the form attached as Exhibit D to the Settlement Agreement—will

be disseminated to each Class Member. (Ex. 1, § 4.2(c).)

Secondly, the Settlement Administrator will oversee wide-ranging publication notice,

which requires the placement of half-page versions of the notice, attached as Exhibit C to the

Settlement Agreement, in the national publications, *People Magazine* and *National Geographic*.

(Ex. 1, § 4.2(d)). Additionally, online media announcements, attached as Exhibit E to the

Settlement Agreement, will be published on the Internet and notice via press release will be

provided to local, national and syndicated news organizations. (Ex. 1, § 4.2(e)).

Finally, the Settlement Administrator will establish a website, which will provide the

traditional "long form" notice (attached as Exhibit B to the Settlement Agreement), allow uninterrupted access by the public to relevant Court documents, access to a downloadable claim form, include information on how to opt out or object to the settlement, as well as provide for the online submission of claims. (Ex. 1, § 4.2(g)).

All of the notices are neutral in tone and will provide Settlement Class Members with a detailed, but easy to understand, explanation of their options, allowing them to make an informed decision as to their participation or non-participation in the settlement. The combination of direct notice, publication notice, online advertisements, the settlement website, and a press release represent a wide cross-section of media specifically chosen to target likely Settlement Class Members and attain the widest reach possible. (Copies of the proposed notices and Claim Form are attached as Exhibits A-E to the Settlement Agreement.) As such, the proposed Notice Plan comports with Rule 23 and the requirements of due process and should be approved by the Court.[3]

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs Nicole Pimental and Jessica Franklin respectfully request that the Court enter an Order (i) granting preliminary approval of the Parties' proposed class action settlement, (ii) certifying the proposed Settlement Class for settlement purposes only, (iii) approving the form and content of the notice to the members of the Settlement Class, (iv) appointing Plaintiffs as Class Representatives, (v) appointing Plaintiffs' counsel as Class Counsel, (vi) scheduling a Fairness Hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.

Dated: October 5, 2012                    Respectfully submitted,

                                          **NICOLE PIMENTAL and JESSICA FRANKLIN**,
                                          individually and on behalf of all others similarly
                                          situated,

                                          By: ___/s/ Rafey S. Balabanian_____
                                                One of Plaintiffs' Attorneys

---

[3]      The Settlement Administrator, Epiq Systems, will also be sending notice to the required government officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. (Ex. 1, § 4.2(i)).

JAY EDELSON (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
CHRISTOPHER L. DORE (Admitted *Pro Hac Vice*)
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Phone: 312.589.6370

SEAN P. REIS (SBN 184004)
(sreis@edelson.com)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Phone: 949.459.2124

SCOTT D. OWENS (Admitted *Pro Hac Vice*)
(scott@scottowens.com]
LAW OFFICES OF SCOTT D. OWENS, ESQ.
2000 East Oakland Park Boulevard, Suite 106
Ft. Lauderdale, Florida 33306
Phone: 954.306.8104

JORDAN L. LURIE (SBN 130013)
(jlurie@weisslurie.com)
JOEL E. ELKINS (SBN 256020)
(jelkins@weisslurie.com)
WEISS & LURIE
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, California 90024
Phone: 310.208.2800

STEFAN COLEMAN
LAW OFFICES OF STEFAN COLEMAN, PLLC
1072 Madison Ave, Suite 1
Lakewood, NJ  08701
Phone: 877.333.9427

*Additional Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I, Christopher L. Dore, an attorney, certify that, on October 5, 2012, I caused the above and foregoing ***Plaintiffs' Notice of Motion and Motion in Support of Preliminary Approval of Class Action Settlement*** to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 5th of October 2012.

/s/  Christopher L. Dore