**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| NICOLE PIMENTAL and JESSICA FRANKLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC., a Delaware corporation, and SLIDE, INC., a Delaware corporation,<br><br>Defendants. | Case No. 11-cv-02585-YGR<br><br>[~~PROPOSED~~] **FINAL JUDGMENT ORDER** |

This matter came before the Court for the Final Approval Hearing set by the Court, as well as Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 103), and Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Incentive Awards (Dkt. 101). The Court, having reviewed the papers filed in support of and in opposition to the Motions, heard argument of counsel, and good cause appearing therein, Plaintiffs' Motion for Final Approval of Class Action Settlement is **GRANTED**, Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Incentive Awards is **GRANTED IN PART**, and it is hereby **ORDERED, ADJUDGED,** and **DECREED** that:

1.  Terms and phrases in this Order shall have the same meaning as ascribed to them in the Settlement Agreement (Dkt. 84-1).

2.  This Court has jurisdiction over the subject matter of this action and over all Parties to the Action, including all Settlement Class Members.

3.  On November 30, 2012, this Court granted Preliminarily Approval the Settlement Agreement and certified a Settlement Class consisting of:

> All Persons who received the Disco Mobile App Text or other text messages sent by or through the Disco Messaging Service informing such Persons about the Disco Messaging Service. Additionally excluded from the Settlement Class are the

following: the Defendants, Class Counsel and Supporting Counsel, the Settlement Administrator, the Mediator, and any respective parent, subsidiary, affiliate or control person of the Defendants or their officers, directors, agents, servants, or employees as of the date of filing of the Action, any judge presiding over the Action, all Person(s) whose claims against the Defendants have been fully and finally adjudicated and/or released, and the immediate family members of any such Person(s).

4. Further excluded from the Settlement Class are those persons who have submitted valid and timely requests for exclusion pursuant to the Preliminary Approval Order. Annexed hereto as Appendix 1 is a schedule of all such persons excluded from the Settlement Class.

*Plaintiffs' Motion for Final Approval of Class Action Settlement*

5. This Court now gives final approval to the Settlement and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class. Specifically, the complex legal and factual posture of this case, and the fact that the Settlement Agreement is the result of arms' length negotiations presided over by a neutral mediator support this finding. The Class Representatives and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement. Accordingly, the Settlement Agreement is hereby finally approved in all respects, and the Parties are hereby directed to perform its terms. The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth, and shall have the full force of an Order of this Court.

6. The Court approved Notice Plan to the Settlement Class, as set forth in the Preliminary Approval Order on November 30, 2012, was the best notice practicable under the circumstances, including direct notice, multiple magazine publications, extensive online advertising, and website publication. The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process.

7. The Court finds that the Defendants properly and timely notified the appropriate state and federal officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of Defendants' notices and accompanying materials, and finds that they complied with all applicable requirements of CAFA.

8. Subject to the terms and conditions of the Settlement Agreement, this Court hereby **DISMISSES** the action on the merits and **WITH PREJUDICE**.

9. Upon the Effective Date of this Settlement, the Plaintiffs and each and every Settlement Class Member who did not opt out of the Settlement (whether or not such members submit claims); and, to the extent a Settlement Class Member is not an individual, all of its present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, predecessors-in-interest, and all of the aforementioned's present, former, and future officers, directors, employees, shareholders, attorneys, agents, consultants, independent contractors, partners, principals, members, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these Persons and entities; and, to the extent the Settlement Class Member is an individual, any present, former, and future spouses, as well as the present, former, and future heirs, executors, estates, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of each of them, and any other representatives of any of these Persons and entities, shall be deemed to have released Defendants Google Inc. and Slide, Inc., as well as any and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, corporations, officers, directors, other individuals or entities in which any of the Defendants has a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities, from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including Unknown Claims), whether in law or in equity, accrued or unaccrued, direct, individual or

representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of the alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions or failures to act regarding the alleged sending of text messages by or through the Disco Messaging Service, including all claims that were brought or could have been brought in the Action relating to such text messages belonging to any and all Releasing Parties. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendants.

10. Upon the Effective Date, the above release of claims and the Settlement Agreement will be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Settlement Class Members, Releasing Parties, and their heirs, executors and administrators, successors and assigns. All Settlement Class Members who have not been properly excluded from the Settlement Class are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on or arising out of the Released Claims.

*Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Incentive Awards*

11. The Court approves a Fee Award to Class Counsel in the amount of $1,500,000, inclusive of $16,996 in costs, which the Court finds to be fair and reasonable. The Court finds this amount to be reasonable in that it represents 25% of the $6 million common fund established for the benefit of the Class. In the Ninth Circuit, a 25% fee is the benchmark in common fund cases, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), and in this case, the relevant factors confirm that use of the benchmark yields a reasonable fee award.

    a. <u>The results achieved</u>: The Court finds this amount fair and reasonable based upon the results achieved in the litigation. Although each Settlement Class Member who files a claim is expected to receive the maximum statutory recovery of $500 for receiving one spam text-message, the anticipated "full" recovery is because only a small portion of the Settlement Class is expected to file claims. Defendants sent

approximately 400,000 allegedly spam text-messages (to 185,688 unique telephone numbers); accordingly, a $6 million common fund achieves approximately 3% of the maximum possible recovery.  Thus, while the Settlement provides meaningful relief, the results achieved are not so exceptional to justify increasing an attorney fee award above the benchmark 25% of the common fund.

      b.    <u>*The risks attendant with the litigation*</u>:  The Court recognizes that Class Counsel took on a risk of spending many hours and incurring expenses in this litigation and could have recovered nothing for their efforts.  However, this is a normal risk in class action lawsuits.  There are no facts in the record regarding any financial risks to the law firms involved if the case had been lost that would justify a risk-premium.  As such, the risks attendant with the litigation do not weigh in favor of departing from the benchmark 25% of the fund.

      c.    <u>*The skill required and quality of work performed by counsel*</u>:  The Court additionally finds this amount fair and reasonable based upon consideration of the skill required and the quality of the work performed by Class Counsel.  Class Counsel have litigated a number of similar TCPA spam text message cases in the Northern District of California, and therefore, the law firm has developed some skill and/or experience litigating these cases.  Additionally, Class Counsel successfully opposed a Rule 12(b)(6) motion to dismiss and a motion to stay.  However, the statute, and attendant work performed was not so complex to warrant a departure from the benchmark 25% of the common fund.

      d.    <u>*Awards in similar cases*</u>:  This factor is neutral because Plaintiffs provided insufficient information for a meaningful analysis of this factor.

      e.    <u>*The contingent nature of the fee and the financial burden carried by the plaintiffs*</u>:  The Court additionally finds 25% of the common fund to be fair and reasonable based upon the contingent nature of the fee and the financial burden carried by Class Counsel.  It is an economic reality that class action litigation depends on the contingent prospect that counsel will create a substantial common fund recovery for the

benefit of the class, from which counsel is entitled to receive a reasonable fee as compensation. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Where, as here, a case settles relatively early, then counsel will have invested little time or money in the matter. 4 Newberg on Class Actions § 14:6 (4th ed.). As reflected in the next factor, the lodestar cross-check, the financial burden carried by Class Counsel does not justify departure from the benchmark 25% of the common fund. Out-of-pocket expenses were less than $17,000. Undertaking this case could not have precluded Class Counsel from taking on other work.

   *f.* <u>*Lodestar cross-check*</u>: The Court additionally finds a percentage award of 25% of the common fund fair and reasonable based upon a lodestar cross-check. A lodestar amount is calculated by multiplying the number of hours reasonably expended on the litigation, as supported by adequate documentation, by a reasonable hourly rate. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Court may then adjust the lodestar upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Here, Class Counsel claims to have expended 1805.1 hours investigating, litigating, and resolving this case, for a lodestar of $820,612. They argue that the lodestar cross-check supports the fee request because $820,612 multiplied by a "reasonable" multiplier of 2.42 equals $1,985,881, which is approximately 33% of the settlement fund.

   A review of the billing records submitted reveals numerous inefficiencies. Foremost, the use of multiple law firms led to excessive billing for unnecessary work. This inefficiency accounts for nearly 25% of the billed time. Moreover, excessive time was performed on many of the tasks; for example, three attorneys expended a total of twenty-four hours working on a motion to file a document under seal. A lodestar of $620,000−which is generous in the circumstances−when enhanced by the requested multiplier of 2.42, provides a Fee Award of $1,500,000. Based on the foregoing, the

      lodestar cross-check confirms the fairness and reasonableness of awarding fees using the benchmark 25% of the common fund.

12.     Defendants shall pay the Fee Award pursuant to and in the manner provided by the terms of the Settlement Agreement.

13.     The Court approves the payment by Defendants of $5,000 to each of the Class Representatives as an incentive award for taking on the risks of litigation and helping achieve the results made available to the Settlement Class. The requested $5,000 incentive payment for each of the Class Representatives is reasonable. *Villegas v. J.P. Morgan Chase & Co.*, 09-CV-00261 SBA, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) ("In this District, a $5,000 incentive award is presumptively reasonable."). Such payment shall be made pursuant to and in the manner provided by the terms of the Settlement Agreement.

14.     The Parties shall bear their own costs and attorneys' fees, except as otherwise provided in the Settlement Agreement and this Order.

15.     This Court hereby directs the entry of this Final Judgment based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Final Judgment notwithstanding the Court's retention of jurisdiction to oversee implementation and enforcement of the Settlement Agreement.

16.     This Final Judgment and order of dismissal with prejudice, the Settlement Agreement, the settlement that it reflects, and any and all acts, statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, or used as an admission by or against Defendants of any fault, wrongdoing, or liability on any Defendants' part, or of the validity of any claim or of the existence or amount of damages.

17.     The Parties, without further approval from the Court, are hereby permitted to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Judgment and do not limit the rights of Settlement Class Members.

18. Without affecting the finality of this Final Judgment in any way, this Court hereby retains continuing jurisdiction over, *inter alia*, (a) implementation, enforcement, and administration of the Settlement Agreement, including any releases in connection therewith; (b) resolution of any disputes concerning class membership or entitlement to benefits under the terms of the Settlement Agreement; and (c) all Parties hereto, for the purpose of enforcing and administering the Settlement Agreement and the Action until each and every act agreed to be performed by the Parties has been performed pursuant to the Settlement Agreement.

**IT IS SO ORDERED**

DATED this 26th day of June, 2013

_____
HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT